# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6: 06-60074-05 |
| VERSUS | * | JUDGE DOHERTY |
| MARIA AIDE DELGADO | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Withdraw Plea, filed in proper person by Maria Aide Delgado ("Delgado").[1] [Rec. Docs. 658 and 680]. The Government has filed Opposition [Rec. Doc. 676]. An evidentiary hearing was held on the Motion on December 1, 2009 and December 22, 2009, at which Delgado, her former defense counsel, Thomas C. Damico, and Special Agent Erol Catalan of the Bureau of Immigration and Customs Enforcement testified. Delgado has filed a post-hearing Memorandum.[2] [rec. doc. 699]. For the following reasons, the court recommends that the Motion be **DENIED.**

## BACKGROUND

On  November 16, 2006, Delgado was named with twelve others in a multi-count indictment charging her with conspiracy to possess with intent to distribute cocaine, cocaine

---

[1]The undersigned has granted Ms. Delgado permission to file *pro se* Motions which have been reviewed and certified by counsel as lacking sufficient basis in law or fact for counsel to file on the defendant's behalf.

[2]Delgado has attached numerous exhibits to her pleading. [see rec. docs. 708, 709 and 712].  However, these exhibits were not entered into evidence at the evidentiary hearing and accordingly, were not subject to cross-examination by the government.  Accordingly, they will not be considered in the context of the present Motion. Ms. Delgado was granted permission to file a post-hearing memorandum to comment and argue upon the evidence presented.  She was not granted an opportunity to present new evidence for this court's consideration.

base and marihuana in violation of 21 U.S.C. § 846 (Count 1), unlawful use of a communication facility in violation of 21 U.S.C. § 843(b) (Counts 5 and 7), distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 6), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 14), and forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 924(d)(1) (Counts 16 and 17). [rec. doc. 1].

On November 14, 2007, Delgado was named in a superceding indictment with the same twelve co-defendants; she was additionally charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 15).[3] [rec. doc. 235].

On December 16, 2008, Delgado appeared in open court and pleaded guilty as charged to Count 1 of the indictment. [rec. doc. 463]. In connection with the plea, the parties entered into a written plea agreement in which Delgado acknowledged, in writing, that her plea was "entered into freely, knowingly, and voluntarily with no threats or coercion, after due consultation with her attorney." Delgado additionally acknowledged that she was satisfied with the assistance she received from her attorney, Thomas C. Damico, whom she believed to have acted competently in this matter. Moreover, acknowledging the facts set out in the Factual Basis to Support Guilty Plea, Delgado affirmed that she was "pleading guilty because she [was] guilty." [rec. doc. 464].

_____

[3]In the superceding indictment, original Count 14 was renumbered as Count 13, and original Counts 16 and 17 were renumbered as Counts 22 and 23.

Delgado also executed an Affidavit of Understanding of Maximum Penalty and Constitutional Rights in which she again acknowledged, in writing, that  that her guilty plea was free and voluntary and made without any threats or inducements whatsoever, and that the only reason she was pleading guilty was because she was in fact guilty as charged.  This document further advises of the Constitutional Rights Delgado would waive by entering a guilty plea, including her right to trial by jury, right to confront and cross-examine witnesses against her and to compel their testimony, as well as her right against self-incrimination. Moreover, the document advises that the maximum penalty for the conspiracy count to which Delgado was to plead guilty carries a mandatory minimum of twenty years up to life imprisonment, given that Delgado had a prior felony drug conviction.  [rec. doc. 464-1].

Moreover, Delgado executed a document containing Stipulated Facts which provided a factual basis to support her plea. In this document, Delgado acknowledged, in writing, as follows:

> I have read this Stipulated Factual Basis and have carefully reviewed every part of it with my counsel.  I fully understand it, and voluntarily agree to it.

[rec. doc. 464-2].

Facts contained in this agreement include that ICE agents set up surveillance at Wendy Dugas' residence on June 9, 2005, observed a Ford Excursion registered to, and driven by, Delgado arrive, and then followed the vehicle after its departure onto I-10 westbound where the vehicle was stopped for following too closely, and in which $77,500.00 was found.  The factual stipulation further states that Dugas had later stated that Victor

3

Valdez, who arrived with Delgado at her (Dugas') residence, put "five packages" on the front doorstep, that were apparently exchanged for the money subsequently confiscated during the traffic stop. [*Id.*].

All of the above documents are dated December 2, 2008 and bear Delgado's signature, as well as the signature of her retained counsel, Mr. Damico.  During her December 16, 2008 plea proceeding and the December 1, 2009 evidentiary hearing,  Delgado acknowledged that she signed all of these documents that date.

During the plea colloquy, Judge Doherty initially asked Delgado if she had sufficient time to discuss her case with her attorney, to which Delgado responded, "some time" and "not really."  Accordingly, Judge Doherty stated that the court would not go forward so that Delgado could have an opportunity to discuss the case with her counsel fully.  Delgado then immediately stated twice that she was in fact ready to plead guilty. Therefore, Judge Doherty advised that the court would recess to allow Delgado to determine, with the assistance of her counsel, whether she would enter her guilty plea that date or any other date, expressly advising that it made no difference to court whether Delgado chose to enter her plea or not. [rec. doc. 688, pg. 5-6].

Following a recess of approximately twenty minutes, Delgado stated that she had sufficient time to discuss her case with Mr. Damico and that she was ready to enter her guilty plea.  The Court also verified, twice, that Delgado was satisfied with the representation that her attorney, Mr. Damico, had provided.  [*Id.* at 6-7].

4

Mr. Damico then explained to the court that Delgado had some issues regarding her pending appeal in a prior Texas federal criminal case in which she stood convicted. Delgado had just read an appeal brief written on her behalf and, as a result, she felt that the conviction would be overturned. Damico had explained to her that if that was the case, and that was her only prior conviction, her mandatory minimum sentence of twenty years would be changed to a mandatory minimum of ten years, but that this was an issue for sentencing.

Damico further explained that pursuant to an agreement with Mr. Grayson, Delgado's Stipulated Factual basis for her plea was changed to reflect that her prior conviction was on appeal and that she disputed the facts surrounding that conviction. Mr. Grayson pointed out that Delgado also had another prior conviction for which she received a deferred sentence and that, accordingly, Delgado would still be subject to a twenty year mandatory minimum sentence.

Damico stated that he had explained to Delgado that if it were possible not to have that conviction counted, those arguments would be raised at sentencing. As a result of these discussions, Judge Doherty confirmed that Delgado understood that on the facts before the court, she faced a possible twenty year mandatory minimum sentence, to which Delgado stated that she understood. [*Id.* at 7-10].

The subject of the prior conviction for which Delgado received a deferred adjudication under Texas law was again discussed later in the proceedings, Mr. Garyson, Judge Doherty and Mr. Damico all opined that for purposes of federal law they believed that

5

the conviction would be counted whether the sentence was deferred or not.  However, Delgado was again advised by the court that this issue was something that she "might want to argue at time of sentencing." [*Id.* at pg. 31-34].

Delgado verified that she had been provided a copy of the charges against her and that she had read them with her attorney.  Accordingly, she waived reading the indictment. [*Id.* at 10-11].

Judge Doherty advised the defendant that should she accept the guilty plea, that Delgado would waive her Constitutional right to trial by jury, her right to testify at trial, her right to call witnesses on her own behalf and to confront and cross-examine the government's witnesses, as well as her right against self-incrimination.  Delgado indicated that she was willing to waive these rights. [*Id.* at  pg. 12-14].

Judge Doherty also explained  the nature of the charge against Delgado, expressly advising her of each element that the government would have to prove beyond a reasonable doubt for her to be found guilty.  Delgado acknowledged her understanding of the charge. [*Id.* at pg. 14-17].

Delgado was expressly advised by the Court of the maximum penalty for the crime to which she was to plead guilty, that is, "a term of confinement up to a maximum of  life in prison"; Delgado acknowledged her understanding of the maximum possible penalty.  [*Id.* at pg. 34-35].

The court  recited the Stipulated Facts which would provide a basis for Delgado's

plea, expressly advising Delgado "If there are any errors or you do not agree with any of

these facts, you are to let me know. Otherwise I will assume they are correct." [*Id*. at pg. 17].

Judge Doherty then read the Stipulated Factual Basis in its entirety, without Delgado ever

voicing any disagreement to any of the facts read by the court.  [*Id*. at pg. 17-24].  Thereafter,

the court gave Delgado an opportunity to correct any of the facts she had just read, before

verifying that they were correct and accurate, and confirming that Delgado agreed with all

of the facts, whereupon the following transpired:

> THE COURT: Okay. We were talking about, Ms. Delgado,  the stipulated
> facts. Now we took a break for the court  reporter, and during that time I
> noticed that you were reading very intently with Mr. Damico. I'm assuming
> you were once again, just to be sure, going over those factual -- stipulated facts
> that you had agreed to, with your attorney, with the government. To the best
> of your knowledge, are they correct and accurate, or are there any that you
> need to bring to this Court's attention?
>
> MR. DAMICO: Your Honor, she has asked me to just point out three small
> differences that she wanted brought out. They do not substantially change the issue.
> On page 3 of the stipulated facts, Count 1, Overt Act, she just wanted to point out that
> she did not -- when it says, "They were bonded out on February 23," the only person
> that was bonded out was Antonio Valdez. Mr. Gonzalez was not bonded out.
>
> THE COURT: But Ms. Delgado did bond out Mr. Antonio Valdez, correct?
>
> THE DEFENDANT: Yes, ma'am, with a $2,500 bond.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: I said, yes, with a $2,500 bond.
>
> THE COURT: But not Gonzalez?

THE DEFENDANT: No, ma'am.

THE COURT: Okay.

THE DEFENDANT: Not Rogelio Gonzalez.

MR. DAMICO: Secondly, Your Honor, on page 6 of the stipulation, right above the Count 7 stipulated facts, the last line of that paragraph (reading): Montoya (video recorded) admitted Delgado promised to pay her if she would travel to Lafayette and conceal currency. She admitted Valdez told her to take the spandex shorts off. Montoya said some of the seized currency had been on the person of Valdez and Delgado.She disputes that she --

THE COURT: She?

MR. DAMICO: I'm sorry. Ms. Delgado -- excuse me, Your Honor -- disputes that she ever had any of the currency actually on her person, but the rest of the paragraph was in fact correct.

THE COURT: You are aware that there was currency on Ms. Montoya's person?

THE DEFENDANT: I'm going to say yes.

THE COURT: Okay. Mr. Grayson.

MR. GRAYSON: Victor Valdez, when he entered a guilty plea, had the same assertion, Your Honor, that all the money was on the person of Ms. Montoya.

THE COURT: Okay.

MR. DAMICO: And then, finally, Your Honor, under the prior convictions, Ms. Delgado would like me to suggest to the Court that, in addition to the conviction and aggravated possession of marijuana, sentenced November 22, 1989 --

THE COURT: Whoa, slow down, Mr. Damico. Cathleen's fingers are already bleeding. Start again a little more slowly, please.

MR. DAMICO: I'm sorry. Prior conviction, she would like to add to that paragraph that this was a deferred sentence.

8

THE COURT: Meaning the conviction in Texas?

MR. DAMICO: In Texas was under a deferred statute.

MR. GRAYSON: It's deferred adjudication, Your Honor. They have in Texas and other jurisdictions that, if you complete a term of probation that they put you on, that you can then come back and have the conviction set aside. However, for purposes of federal law, once you are convicted, you are convicted whether it's deferred or not.

THE COURT: Okay. That is something you might want to argue at time of sentencing, Ms. Delgado, but having had occasion to look at that -- a similar aspect in another matter, I think you will find Mr. Grayson's assertion is probably correct under federal law. But Mr. Damico, look into it. If you think it is -- I think it takes a true expungement that would show that it was an error rather than a deferment or a pardon or something of that  ilk.

MR. DAMICO: And I had also indicated to Ms. Delgado my belief that that's exactly the same, but that she wanted me to point out that it was a deferred sentence.

THE COURT: Okay, all right. So all the other facts you agree to, Ms. Delgado?

THE DEFENDANT: Yes, Your Honor.

[*Id.*at pg. 31-34].

Prior to accepting her plea, Judge Doherty again verified that Delgado agreed with the factual basis for her plea as follows:

THE COURT: Okay. Now we went over with particularity the factual scenario, and you agreed with that factual scenario, yes, Ms. Delgado?

THE DEFENDANT: The stipulations?

THE COURT: Yes.

THE DEFENDANT: Yes, Your Honor.

[*Id.*at pg. 42].

Moreover, Judge Doherty confirmed that Delgado had signed and understood each of the documents she signed in connection with her plea, again verifying the correctness of the factual basis for Delgado's plea as follows:

> THE COURT: All right. Mr. Damico, please get it, and I want you to walk Ms. Delgado through every page of that document, making certain, Ms. Delgado, you have seen it before, you have had it explained to you, you understand it. Every signature that purports to be yours, I want you to tell me if, in fact, it is not yours, now is the time. Otherwise I will assume they are all your signatures, if they purport to be, and that you understood every one of those documents before you signed it and that you agreed with the facts contained in the stipulation and understood the legal consequence. Mr. Damico. Cathleen, let the record reflect they are going through each and every page and having a discussion as to each. (Defendant conferring with attorney.)
>
> MR. DAMICO: Your Honor, I have gone through each and every page of the plea agreement, as well as the -- as well as the elements of offense and stipulated facts, and then, finally, the -- I believe it is the consent decree of forfeiture along with the agreement to abandon property for Ms. Delgado. This is information that we did discuss a couple weeks ago, went through it page by page, read the entire document, discussed it, and Ms. Delgado acknowledges that she has seen and discussed these documents with me.
>
> THE COURT: Okay. And each of those signatures are yours?
>
> THE DEFENDANT: They are my handwriting. That is my signature, Your Honor.
>
> THE COURT: And you understood each of them?
>
> THE DEFENDANT: Yes, Your Honor, I did.

[*Id*. at pg 43-44].

Finally, prior to accepting the Stipulated Factual Basis for Delgado's plea into the record, Judge Doherty again confirmed that Delgado agreed with the factual basis of her plea, to which Delgado responded, "Yes, Your Honor." [*Id*. at pg 48].

10

Delgado admitted that she and co-defendant Eric Alexander had an agreement to distribute narcotics (marijuana, cocaine and cocaine base) and that Delgado knew this was illegal, but that she nevertheless willfully entered into the agreement.  [*Id*. at pg. 24-25]. Delgado further admitted that she sold Alexander cocaine knowing that he would cook it to make "crack" (cocaine base), and had engaged in activity to provide Alexander with marijuana knowing he would sell it.   [*Id*. at pg. 25-27].

With respect to the quantity of drugs the government would seek to prove were involved in the conspiracy, Judge Doherty initially advised Delgado that it would be over fifty grams of cocaine base, and then, after being advised by Mr. Grayson that the quantity would be over 4.7 kilos, she further advised that the government intended to "get way beyond the 50 grams of cocaine base." [*Id*. at pg. 29-30].

Delgado also confirmed that she and her attorney discussed the Guidelines, but that he did not tell her what her sentence would be. [*Id*. at  pg. 45]. Judge Doherty further confirmed that Mr. Damico had discussed the concept of "other relevant conduct" with her and explained "how it may play out here.", to which Delgado replied, "Yes, Your Honor." To be certain that Delgado understood, Judge Doherty again advised Delgado that the government intended to prove other relevant conduct involved in the conspiracy to which she was entering her guilty plea, in the range of 4.7 kilograms of cocaine base, to which Delgado again voiced her understanding.  [*Id*. at  pg. 46-47].

11

Judge Doherty also confirmed that Delgado's plea was freely and voluntarily entered, specifically verifying that no one had made any promise, other than those contained in the plea agreement, that induced her to plead guilty. [*Id*. at pg. 44].  Delgado admitted that she had not been threatened by anyone, intimidated or forced to plead guilty. [*Id*. at pg. 38].

At the conclusion of the proceedings, after finding Delgado fully competent and capable of entering an informed plea, and further finding that the plea was knowing, voluntary and supported by an independent basis in fact, containing each of the essential elements of the offense, Delgado's guilty plea was accepted by the Court and a PSR was ordered. [*Id*. at  pg. 49-50].

After receipt of the PSR (dated February 18, 2009), and the filing of objections by counsel thereto dated March 6, 2009, and the probation officer's response (dated March 9, 2009), but prior to sentencing, on June 2, 2009, Delgado filed a Motion to Release Mr. Damico.  Following an evidentiary hearing, her request was granted.  Accordingly, the Office of the Federal Public Defender appointed current counsel, G. Paul Marx. [rec. docs. 581, 594 and 608].

Delgado filed the instant Motion to Withdraw her plea on October 28, 2009[4], asserting that the factual basis for the plea was inaccurate and incorrect, "to the extent that it states [she] was involved in a broad based conspiracy and thereby overstates the quantity of

---

[4]A copy of an unsigned Motion to Withdraw Plea  was attached to a letter Delgado sent to this court requesting a hearing on Delgado's request to have Mr. Marx withdrawn as her counsel of record, filed in the record on September 21, 2009. [*See* rec. doc. 628-1].  However, the Motion was not properly filed until October 28, 2009.

controlled dangerous substances for which [she] should be held criminally [responsible]",
and that she signed the stipulation of facts "under the coercion of the moment at the time of
the plea and her attorneys advice that if she did not agree to the stipulation, she would have
to be subject to a jury trial and could receive a life sentence." [rec. doc. 658].

A Supplemental Motion, filed on November 13, 2009, in which Delgado asserts that
she received ineffective assistance of counsel in connection with her plea because counsel
failed to establish a "responsible client and attorney relationship", never explained the
procedures and proceedings, including her alleged right to a preliminary examination and to
file a motion to suppress, and never provided her with copies of the indictment or discovery,
and further that she was coerced by her attorney to sign the plea agreement and to accept the
stipulated facts, with which she "disagrees and disapproves" because they contain "false
statements" and "inaccurate details".  She further complains that the government is using her
1989 prior felony conviction to raise her statutory mandatory minimum sentence of
imprisonment from ten to twenty years. [rec. doc. 680].

During the evidentiary hearing, Delgado testified contrary to her sworn testimony
during her guilty plea, and contrary to the allegations in the documents she signed in
connection with her plea.  Initially, Delgado testified that she was unaware of her right to a
preliminary examination and to file a motion to suppress until October 2009 when she found
a law book at the institution where she was then incarcerated.  She further testified that Mr.
Damico never told her about either of these things prior to entry of her plea.  She further

testified that Damico never provided her with a copy of the indictment or discovery he received in this case, nor did he meet with her to discuss and go over the discovery packet he received from the government.  Moreover, she testified that Damico never told her about her right to subpoena and cross examine witnesses or present evidence on her own behalf. Thus, she was unaware of these rights when she entered her plea.

Moreover, she complained that Mr. Damico failed to return her phone calls.  It was her feeling that because she had paid Damico only $5,000.00 he was not going to "put too much work into my case."

With respect to the documents executed in connection with her plea, and more particularly, the Stipulated Factual Basis for her plea, Delgado stated that while she had signed and discussed the document with Damico, she did not agree with it.  More specifically, she stated that it was her belief that no surveillance was done by ICE agents in connection with the June 9, 2005 stop and seizure of $77,500.00 mentioned on page five and six.  This contention was based on the fact that the Louisiana state trooper's report of the incident does not mention ICE surveillance nor that ICE had requested the stop be made, and that she was not prosecuted for the incident (she signed a waiver and was released and never prosecuted for the traffic citations which were issued), as well as her indication that she did not see anyone following her vehicle from the Dugas home to I-10 when she looked behind her.

14

She further contested details of the stop including an allegation that Ms. Montoya was wearing spandex shorts under her dress, and that her vehicle was taken to the Louisiana State Police office.  She also thought that her prior conviction, set forth on page seven, should have been referred to as a deferred adjudication. In sum, she stated that she did not want to sign the document and that she now regrets having done so.  When asked why she did not state this during her plea, Delgado testified that when she tried, Judge Doherty got mad.

With respect to the alleged coercion, Delgado testified that during the break at the beginning of her plea, Damico told her that she had made Judge Doherty angry and that if she did not take the plea, the Judge would be more upset, that she (Delgado) would go to trial and receive a life sentence.  Delgado stated that she did not want to go through with her plea, but did so because of what Damico had told her.

Mr. Damico testified that he did establish a competent attorney-client relationship with Delgado. Although they "bumped heads", as sometimes happens when a client does not like what he has to say; this is not unusual in the attorney-client relationship in the criminal context.  Damico further testified that he spoke with Delgado's family members prior to her arrival in Lafayette, and met with her personally to talk about the case with her between seven and nine times, for well over an hour and in some instances over two hours at a time.  During these meetings, Damico stated that he discussed the charges against her, explained criminal procedure and potential defenses that may apply in her case, discovery and evidence received. Damico testified that he normally does not respond to correspondence from his clients, but

15

rather prefers to visit with them personally.  This was particularly the case with Delgado, as she sent "a good bit" of correspondence, some of which was repetitive, covering subjects that he had already discussed with her.  As for the financial arrangement between he and Delgado, Damico stated that he had  "absolutely" no problem financially or in terms of his resources in proceeding to trial.

Damico testified  that with all of his clients, Delgado not excepted, he discusses at great lengths the discovery he has received and the investigation that he has done. It is his practice not to provide copies of discovery to clients who are incarcerated because of his concern about "jailhouse snitches" who might obtain and read copies of such discovery material and use it to help themselves.  Accordingly, Damico goes over the discovery with his clients, but does not leave copies at the jail.  In this case that is exactly what he did. He met with Delgado and discussed the discovery he received and the facts of her case with her.

With respect to Delgado's right to a preliminary examination, Damico testified that Delgado had been indicted prior to her arrival in Lafayette, accordingly, he did not think she was entitled to a preliminary examination, and he told her that. As for the filing of a motion to suppress, Damico stated that he would have discussed the possibility of such a motion, explained the applicable law and made a recommendation on whether a motion should be filed; the decision not to file a motion to suppress in this case was the result of a joint decision between he and Delgado.

With respect to alleged coercion, Damico testified that he discussed the pros and cons of the case with Delgado, made a recommendation to her, but did not coerce her in any way. He discussed the strength of Delgado's case with her, the advantages and, more importantly in this case, the disadvantages of going to trial, including the loss of a reduction for acceptance of responsibility and the possibility of an enhancement for obstruction of justice, the overwhelming evidence making her chances of success at trial "very low, if at all" and the fact that the other co-defendants were "getting on board to testify against her."

With respect to the break taken at the beginning of Delgado's plea, Damico testified that during that break he advised Delgado that she had the right to go to trial if she did not want to plead guilty and, as he was obligated to do, also again advised her of the disadvantages of taking that course of action; however, he denied coercing her.  Damico further testified that Delgado is not a "shrinking violet" who could have been coerced by him in any way.

Finally, on the issue of the alleged inaccuracies in the Stipulated Factual Basis supporting her plea, Damico testified that he had discussed the facts contained therein prior to her appearance before the court, and that Delgado had not objected to any items, except that her federal conviction was on appeal and that issue was addressed.  However, when they appeared in court, during the break taken at the beginning of her plea proceeding, Delgado expressed concerned about what she believed the surveillance should have shown. However, when specifically asked whether Delgado raised an objection about whether she had actually

17

been under surveillance at the time she was stopped in Jeff Davis Parish, Damico stated he did not believe so and that he did not recall any discussions regarding that. He further testified that he did not recall Delgado ever mentioning any omission in the state police report regarding ICE surveillance.  Rather, Delgado raised issues which had no legal impact, that were not dispositive of either her guilt or the Guideline range which might apply to her.  For example, Delgado raised an issue as to whether the five kilograms of cocaine was delivered to the house or left on the porch. Furthermore, if there was an omission in the state police report, that would not have changed his recommendation that Delgado enter a guilty plea in this case.

With respect to sentencing, Damico testified that he went over the Guidelines with Delgado and had given her his best estimates, as well as his recommendations.  He further stated that after entry of her plea, Delgado did not ask him to file a motion to withdraw her plea.  Moreover, he did not recall Delgado ever asking him to file a motion to withdraw her plea after the probation officer issued his PSR, which the record indicates was received by the court  in Mid-March 2009. [*See* rec. doc. 538].   Indeed, the record reveals that the first complaints regarding Delgado's plea appeared in June, 2009, when she moved to remove Damico from his representation. [*See* rec. doc. 581].

Special Agent Catalan testified that he and other ICE agents were conducting surveillance at the residence of Wendy Dugas in Lafayette. The agents were getting information gathered from a wire-tap that led them to conduct physical surveillance, as needed.

On one such occasion, Catalan  testified that he observed a Ford Excursion arrive and depart the residence, and that he followed that vehicle  on to I-10 westbound.  At some point thereafter, he contacted the state police and requested that a traffic stop be conducted.  He observed the traffic stop from approximately a football field away, and when the vehicle was moved to another location he followed, keeping the vehicle in sight. Moreover, he was present at the troop headquarters, where Ms. Delgado was inside their garage. In fact, Catalan testified that he was present the entire time, and observed Delgado's interaction with the state trooper.

It did not surprise Catalan that the state trooper's report does not mention surveillance by ICE or ICE's involvement in the traffic stop because, while the troopers were tasked with making a stop of the vehicle, the state troopers were not advised that ICE was doing surveillance, they were told only that ICE had a wire-tap on-going. Moreover, the occupants of the vehicle were not jailed because that was part of the ICE's strategy, to keep the wire-tap in operation.  If the occupants would have been booked or charged, Catalan would have had to disclose the fact of his surveillance and the wire-tap.

## LAW AND ANALYSIS

There is no absolute right for a defendant to withdraw a guilty plea. *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009).  However, Fed.R.Crim.P. 11(d)(2)(B) allows a district judge to permit a defendant to withdraw a guilty plea prior to sentencing upon the showing of "any fair and just reason."  The decision to permit or deny withdrawal of a guilty plea is within the district court's sound discretion. *United States v. Rios-Ortiz*, 830 F.2d 1067,

19

1069 (5th Cir. 1987); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).

In *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985), the Fifth Circuit set out seven factors for the district courts to consider when ruling on a motion to withdraw a guilty plea prior to sentencing: (1) whether the defendant has asserted her innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether adequate assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *London,* 568 F.3d at 563 *citing Carr*, 740 F.2d at 343-44.

The district court is not required to make findings as to each of the *Carr* factors. *Lampazianie*, 251 F.3d at 524 *citing United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991).  No single factor dispositive; instead, the determination is based on a totality of circumstances. *Id.* (citations omitted).  The burden of establishing a "fair and just reason" for withdrawing a guilty plea remains at all times on the defendant. *Id.*(citations omitted).

In this case, Delgado has not satisfied her burden of establishing a "fair and just reason" for this court to permit her to withdraw her plea.

Although Delgado asserts that her plea should be withdrawn because it was entered as a result of coercion and therefore was not voluntary (the sixth *Carr* factor), the record before this court does not support her contention that she was coerced into entering a guilty plea by

threats from Damico. To the contrary, plea transcript and documents executed by Delgado belie her present assertion.  A defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir.1985). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Id. quoting  Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977).

Judge Doherty painstakingly explained the consequences of Delgado's plea and repeatedly verified that Delgado understood and, nevertheless, wished to enter a guilty plea. Moreover, when expressly asked by the court if anyone had threatened, forced or intimidated her in any fashion to plead guilty, Delgado declared, under oath, in open court, that she had not been threatened, intimidated or forced to plead guilty.  Indeed, had Judge Doherty had any suspicion that this was the case, she never would have accepted Delgado's plea in the first instance.

Moreover, the documents signed by Delgado in connection with her plea refute Delgado's present contention.  Any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). Judge Doherty verified that Delgado signed and understood each of the documents entered in connection with her plea.  Of these documents, both the Plea Agreement and Affidavit of Understanding unequivocally state that Delgado's plea was made voluntarily with no threats or coercion.

21

While Delgado testified at the evidentiary hearing that she was in fact pressured by her attorney, Damico, to plead guilty, the undersigned finds her testimony not credible. Damico, who this court finds credible, steadfastly denied threatening or coercing Delgado in any fashion. Moreover, Delgado's claim that Damico threatened her by insinuating that he refusal to plead guilty would anger or upset Judge Doherty is unconvincing, given that Judge Doherty herself told Delgado, prior to the recess, that it made no difference to her whether Delgado chose to enter he plea or not. Moreover, the plea transcript reveals not one shred of evidence to indicate that Judge Doherty was in any way angry or upset with Delgado. To the contrary, the transcript reveals that Judge Doherty patiently and methodically confirmed that Delgado's plea was knowingly, intelligently and voluntarily made.

Finally, as noted by Damico in his testimony, and having had the opportunity to observe Ms. Delgado in court on several occasions, and having further observed her demeanor when testifying at the December 1, 2009 evidentiary hearing, it is clear to the undersigned that Ms. Delgado is not a "shrinking violet" who would be easily intimidated, threatened  or coerced. Her history in this court is to the contrary.

To the extent that Delgado is now claiming that her plea was unknowingly or unintelligently entered as a result of alleged inaccuracies and falsities in the Stipulated Factual Basis for Delgado's plea, that claim is unpersuasive. Delgado suggests that she was unaware of the facts contained in the document which she signed almost two weeks prior to entry of her plea.  However, the document itself refutes this allegation, expressly and unambiguously

22

stating that Delgado "read . . . and carefully reviewed every part of [the document] with [her counsel]" and that she "fully understand[s] it, and voluntarily agree[s] to it." Moreover, during her plea, Delgado repeatedly was given the opportunity to contest the facts contained in the stipulation, yet Delgado stood silent.  Finally, the transcript of Delgado's plea reveals that Delgado and Damico reviewed the document, page by page, while in open court before Judge Doherty, prior to her declaring, while under oath, that she signed and understood the document.  Accordingly, the undersigned cannot accept Delgado's belated attempt to disavow the accuracy and truthfulness of the facts contained therein.

Moreover, Delgado's primary contention, that she was not under surveillance when she drove her Ford Excursion to the residence of Wendy Dugas and was subsequently stopped by the Louisiana State Police, is directly contradicted by the testimony of Special Agent Catalan, who testified that he did, in fact, perform surveillance that night and did, in fact, follow and observe the traffic stop.  While Delgado may not have seen Catalan following her, that is not surprising, given that Agant Catalan is a highly trained professional.  Likewise, it is not surprising that the surveillance was not mentioned in the state police report or that Delgado was not charged or prosecuted for the events of that evening.  As explained by Catalan, the state troopers were not told of the surveillance, only that ICE had a wire going.  Had Delgado been charged or prosecuted, the ongoing investigation would have been disclosed, thereby rendering further surveillance or wire interceptions useless.[5]

---

[5]Furthermore, the court finds this entire issue irrelevant.  The accuracy of the trooper's report makes absolutely no difference under the facts of this case.

23

The other alleged inaccuracies and falsities claimed by Delgado are likewise not grounds for finding Delgado's plea invalid. None of the alleged errors are dispositive of Delgado's guilt nor the Guideline range which may apply to her.  To the contrary, Delgado admitted the facts necessary to find her guilty of the charged conspiracy in open court while under oath before Judge Doherty.

Moreover, Delgado was well aware of the breath of the charged conspiracy and the quantity of controlled substances which the government would attempt to hold her responsible for as a result of her participation, as Delgado was repeatedly advised of by both the Court and Mr. Grayson that the amount not only exceeded 50 grams of cocaine base, but rather was in the range of 4.7 kilograms.  Her belated claim of ignorance is therefore not credible.

Nor does this court find Delgado's suggestion that she was unaware that her 1989 conviction could be used as a basis for subjecting her to a mandatory minimum sentence of twenty years, as she was expressly advised by Grayson, Judge Doherty and Damico that this conviction was probably going to be used to compute the Guideline range, whether or not her sentence was deferred.

Finally, the undersigned does not find Delgado's claim that she signed the factual stipulation or plea agreement under duress convincing.  These documents were signed almost two weeks prior to entry of Delgado's guilty plea.  Moreover, during her plea, Judge Doherty provided Delgado with every opportunity to disavow the facts contained in the factual stipulation and the plea deal set forth in her plea agreement, yet Delgado chose to re-affirm her understanding and agreement before Judge Doherty.

Delgado also asserts that her plea should be withdrawn because she received ineffective assistance of counsel (the fifth *Carr* factor).  Again, the record before this court does not support her contention. To the contrary, the record indicates that Damico zealously acted to protect Delgado's rights. Furthermore, in her plea agreement, Delgado stated that she was satisfied with the assistance she received from Damico, whom she believed to have acted competently in this case.  Those same sentiments were declared by Delgado under oath, in open court, not once, but twice, when questioned by Judge Doherty.  Delgado further affirmed, both prior to, and after the twenty minute recess at the beginning of her plea hearing, that she had sufficient time to discuss this case with her counsel and that she was therefore ready and willing to enter her plea.

Moreover, while Delgado now faults Damico for allegedly not providing her a copy of the indictment, that claim is belied by the statements made by Delgado during her plea hearing, wherein Delgado acknowledged that she had read the charges against her with her attorney.  Furthermore, the charge to which Delgado was to enter her plea, and the elements thereof, were thoroughly explained to Delgado by Judge Doherty prior to entry of her plea.

The same is true with respect to Delgado's claim that she was unaware of her right to subpoena and cross examine witnesses or to present evidence on her own behalf.  During her plea colloquy with the court, Judge Doherty expressly advised Delgado of these and all other Constitutional rights which she possessed and which she would waive in the event that she chose to plead guilty.  Furthermore, these same rights were set forth in the Affidavit of

25

Understanding of Maximum Penalty and Constitutional Rights executed by Delgado on December 2, 2008, a document which Delgado acknowledged while under oath, in open court, that she understood.

Delgado's claim that Damico failed to advise her of her alleged right to a preliminary examination or to file a motion to suppress is equally unavailing. As noted by Damico in his testimony, Delgado was not entitled to a preliminary examination as she had been indicted prior to her arrival in this district. Moreover, Damico testified that he had in fact gone over the possibility of the filing of a Motion to Suppress and that one was not filed in this case as a result of a joint decision between he and Delgado. Moreover, given that twelve other persons were indicted in this case, and not one of those defendants filed a Motion to Suppress, the undersigned would find it hard, if not impossible, to find Damico ineffective for failing to file such a motion. Given the facts known to the undersigned, it appears highly doubtful that the defendant had standing to file any such motion.

The undersigned also finds Delgado's claim regarding Damico's failures in connection with the discovery received in her case not credible. Delgado's testimony was directly contradicted by the testimony of Damico, who forthrightly testified that while he did not provide copies of discovery to Delgado, he met with her for lengthy periods of time on several occasions to discuss the discovery he received from the government and the facts of Delgado's case with her. The undersigned finds his testimony credible. Moreover, under the facts presented in this case, the undersigned does not find Damico's reason for not leaving

copies with Delgado in the jail unreasonable or in any way deficient.  To the contrary, to do so may have been detrimental to Delgado's interests, as this court is well aware of the danger presented by inmates who seek to use information obtained against others for their own benefit.

Finally, the undersigned finds no credible support for Delgado's claim that Damico did not establish an attorney-client relationship with her.  Damico testified that he met with Delgado and her family members, advised Delgado of the advantages and disadvantages of going to trial, and the pros and cons of entering a guilty plea, as he was professionally obligated to do.  While this advice may not have been to Delgado's liking, it nevertheless had to be given.  That a criminal client may be upset by adverse news from her counsel is not surprising, and does not render counsel's representation improper. The court further notes that Delgado never complained of the representation provided by Damico until after she received the PSR and had apparently been advised by Mr. Grayson that he would not file a Section 5K1.1 motion on her behalf.   Delgado's present complaint is therefore suspect and accordingly discounted.

Delgado has not addressed the other *Carr* factors.  She does not assert her innocence, does not provide any explanation for seeking to withdraw her plea until almost ten months after the plea was entered, nor does she address any prejudicial effect the withdrawal of her plea would have on the government or any inconvenience to the court or the waste of judicial resources.  The government, however, argues strenuously that these factors also weigh against allowing Delgado to withdraw her plea. The undersigned agrees.

27

As previously discussed, Delgado has repeatedly admitted her guilt while under oath in open court, as well as in documents executed in connection with her plea.  She has further admitted that she was a knowing, wilful and active participant in the charged conspiracy, who agreed to sell Eric Alexander cocaine knowing he would cook it to make crack.  Delgado does not challenge these admissions, nor does she assert her innocence in her present Motion.  Accordingly, this factor weighs in favor of the denial of Delgado's motion.

Moreover, Delgado failed to seek withdrawal of her plea until almost ten months after entry of her plea.  The undersigned has found no case allowing withdrawal after such a lengthy period of time.  The same is true, even if this court were to find that her first complaints regarding her plea were in June, 2009, six months after entry of her plea, when Delgado moved to terminate Damico from her representation.  Furthermore, as noted by the government, the Fifth Circuit has affirmed denials of motions to withdraw involving much shorter delays.  *See United States v. Thomas*, 13 F.3d 151, 152-153 (5th Cir. 1994) (six weeks); *United States v. Young*, 981 F.2d 180, 184 (5th Cir. 1992) (three months); *United States v. Rinard*, 956 F.2d 85, 88-89 (5th Cir. 1992) (sixty-nine days); *Carr*, 740 F.2d at 345 (twenty-two days); *Lampazianie*, 251 F.3d at 524-525 (seven months); *London*, 568 F.3d at 563-564 (six weeks); *Badger*, 925 F.2d at 104 (over six weeks).

Although this case is currently set for trial on August 30, 2010,  given that this is a complex drug conspiracy case with numerous defendants and hundreds of exhibits, the undersigned is not prepared to find that withdrawal of Delgado's plea would not prejudice the

government or otherwise inconvenience the court.   Moreover, given that Delgado has admitted her guilt while under oath, the undersigned finds that allowing Delgado to withdraw her plea would result in a significant waste of judicial resources and would undermine the purpose of Rule 11, namely, to ensure some finality at the time a plea is accepted, and would thereby "reduce plea proceedings to a time-consuming formality with no lasting effect." *Rios-Ortiz*, 830 F.2d at 1069. While Delgado has obviously had a "change of heart", that circumstance is insufficient reason for this court to permit withdrawal of her plea.  *Id.*

Based on the foregoing reasons, the undersigned recommends that Delgado's Motion to Withdraw her Plea be **DENIED.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 24th day of February, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE